# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| TREVIS D. PETERSON,<br><br>    Plaintiff,<br><br>vs.<br><br><br>PATRICK J. MURPHY, Acting Secretary of the Army, UNITED STATES ARMY CORPS OF ENGINEERS, Agency,<br><br>    Defendants. | Case No.: 2:16-cv-00075-EJL-REB<br><br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (Dkt. 39)**<br><br>**PLAINTIFF'S AMENDED MOTION FOR PROTECTIVE ORDER (Dkt. 40)**<br><br>**PLAINTIFF'S MOTION FOR ADDITIONAL SETTLEMENT CONFERENCE AND SANCTIONS (Dkt. 41)**<br><br>**DEFENDANT'S CROSS-MOTION FOR A PROTECTIVE ORDER, SANCTIONS, AND DISCOVERY (Dkt. 44)** |

Presently before the Court are Plaintiff's Motion for Protective Order (Dkt. 39), Plaintiff's Amended Motion for Protective Order (Dkt. 40), Plaintiff's Motion for Additional Settlement Conference and Sanctions (Dkt. 41), and Defendant's Cross-Motion for Protective Order, Sanctions, and Discovery (Dkt. 44). Having carefully considered the record, heard oral argument on January 16, 2018, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## BACKGROUND

Plaintiff Trevis D. Peterson ("Peterson") alleges his employer, Defendant United States Army Corps of Engineers ("USACE"), engaged in unlawful age discrimination and unlawful retaliation, both in violation of the Age Discrimination in Employment Act of 1991, 29 U.S.C.

§§ 621–634. *See generally* Am. Compl. (Dkt. 2.) According to Peterson, the USACE wrongfully failed to promote him from his position as a maintenance worker at the Albeni Falls Dam in Oldtown, Idaho. *Id.* at ¶¶ 1, 10. His retaliation claim was dismissed on summary judgment (Dkt. 56), but his age discrimination claim remains pending.

On February 15, 2017, a judicial settlement conference was held before U.S. Magistrate Judge Candy W. Dale. (Dkt. 30.) Prior to that conference, Judge Dale issued a routine order regarding various logistics relating to the conference. (Dkt. 23.) Among other things, the order required the personal presence of both Peterson and of a USACE representative with "full settlement authority." *Id.* at ¶ 3. Among those attending the conference on USACE's behalf were Ryne Linehan ("Linehan"), the highest ranking USACE employee at Albeni Falls Dam, and counsel James Schaefer, Assistant United States Attorney for the District of Idaho.[1] The case did not settle. (Dkts. 30, 35.)

Peterson moves for an order requiring an additional settlement conference and sanctioning USACE for bad faith in the February 2017 conference, alleging that USACE violated Judge Dale's order by failing to bring a representative with full settlement authority. Mem. ISO Plf.'s Mot. for Add'l Settlement Conf. and Sanctions (Dkt. 41-1). Based on declarations Linehan provided to Peterson's counsel, Peterson contends that Linehan did not have full settlement authority to settle the case. *Id.* at 2.

In that regard, Linehan stated as follows:

> Although I have never been involved in the Agency's case strategy regarding Mr. Peterson's case I was ordered, by my supervisor COL Buck, to attend a mediation session in the Peterson case. Before the mediation session I read the court order. The court order required that I be given "full settlement authority" to

---

[1] The record is unclear whether anyone else attended on USACE's behalf. The pending issues relate to the roles and responsibilities of Linehan and AUSA Schaefer at the conference, so whether other individuals attended is not relevant in deciding these motions.

settle the case. I was not given "full settlement authority." When I asked COL Buck, in writing, for "full settlement authority" I was told, by the Agency's attorney, James Schafer, that I did not have the authority to settle the case. Instead Mr. Schafer informed me that he (Schafer) would be making the decisions about the case. At no time did Mr. Shafer tell me that he (Schafer) represented me. No other Agency lawyer has told me that I was represented by Agency attorneys on the Trevis Peterson case or in any other capacity. At no time did any agency employee, Mr. Schafer, or any other agency lawyer, tell me that I had the power to make the agency resolve Mr. Peterson's case. At no time did any Agency lawyer or supervisor tell me that I "spoke for" the Agency. At no time did any Agency lawyer or supervisor tell me that I could not have contact with Mr. Peterson's lawyers.

Second Linehan Decl. ¶ 5 (Dkt. 39-2 Ex. C).[2] Peterson asserts that Linehan's lack of full settlement authority means USACE violated Judge Dale's order regarding the settlement conference. Memo ISO Plf.'s Mot. for Add'l Settlement Conf. and Sanctions 5 (Dkt. 41-1). Accordingly, Peterson argues, a new settlement conference should be held, and USACE must have a representative with full settlement authority. *Id.* Peterson also requests an award of his fees and costs associated with the first settlement conference and with bringing the motion for an additional settlement conference. *Id.*

USACE opposes Peterson's motion, arguing that (1) it met Judge Dale's requirement by bestowing the settlement authority it could properly extend, to AUSA Schaefer; (2) Judge Dale was aware of and did not object to Schaefer's limited settlement authority; and (3) the limits on settlement authority were not a barrier to any possible, but unrealized, settlement. Def.'s Opp. to Plf.'s Mot. for Add'l Settlement Conf. and Sanctions 4 (Dkt. 43). Further, USACE alleges that the contact with Linehan and the acquisition of his declarations by Peterson's counsel constituted ethical violations because such contacts were unauthorized *ex parte* communication with a

---

[2] Mr. Linehan's declarations misspell AUSA Schaefer's last name, but there is no doubt that his references are to James Schaefer.

represented person, given Linehan's role with USACE. *Id.*

Both parties seek protective orders tied to Linehan's declarations. Plf.'s Mot. for Prot. Order (Dkt. 40)[3]; Def.'s Cross-Mot. for a Prot. Order, Sanctions, and Discovery (Dkt. 44) ("Def.'s Cross-Mot."). Linehan's first declaration, dated June, 27, 2017, details allegations of age discrimination at USACE separate and apart from those Peterson alleges. Plf.'s Mem. ISO Mot. for Prot. Order 2 (Dkt. 39); *see also generally* Linehan Decl. (Dkt. 39-2 Ex. B). On June 28, 2017, Peterson's counsel Matthew Z. Crotty ("Crotty") disclosed the declaration to AUSA Schaefer. Crotty Decl. ¶ 3 (Dkt. 39-2). Two days later, Schaefer sent Crotty (and Crotty's co-counsel) a letter alleging that Crotty had "engag[ed] in prohibited *ex parte* communications with Mr. Linehan." *Id.*; *see also* Letter from Schaefer to Crotty et al, dated June 30, 2017) (Dkt. 39-2 Ex. A). The letter demanded that Crotty immediately cease unauthorized communications with USACE employees and that Crotty produce "a complete record of [his] communications with current USACE employees regarding the subject matter of this case."

In response, Crotty obtained from Linehan a second declaration detailing some of the circumstances of the contacts and communications between Crotty and Linehan. Second Linehan Decl. (Dkt. 39-2 Ex. C). Crotty also moved for an order to protect Peterson (via Crotty) from having to disclose the information Schaefer demanded in the letter.

The record shows that Linehan and Crotty first interacted in November 2016, when Linehan contacted Crotty to ask about whether Crotty could represent Linehan against USACE.

---

[3] At Docket No. 39, Peterson filed a document entitled "Plaintiff's Motion for Protective Order," but the filing contained a memorandum in support of the motion rather than the motion itself. Peterson properly filed the motion at Docket No. 40. Because both filings are labeled as "motions" in the ECF system, they will be treated as such and this decision will resolve both of them — even though Docket No. 40 is the proper motion and Docket No. 39 is a memorandum in support of the Docket No. 40 motion.

Crotty Decl. ¶ 6 (Dkt. 39-2); Second Linehan Decl ¶ 3 (Dkt. 39-2 Ex. C). Linehan subsequently

contacted Crotty in April 2017 to inquire again about possible representation. Crotty Decl. ¶ 7

(Dkt. 39-2); Second Linehan Decl. ¶ 3 (Dkt. 39-2 Ex. C). Neither set of interactions resulted in

Crotty agreeing to represent Linehan. Nonetheless, Peterson's motion for a protective order is

based on Crotty's contention that Linehan was a prospective client under the Idaho Rules of

Professional Conduct ("IRPC"); that, therefore, Linehan's communications with Crotty are

privileged under IRPC 1.18(b); and, finally, that Crotty would violate IRPC 1.18(b) by

disclosing the communications to Schaefer.[4]

On the other side, USACE moves for a protective order, sanctions, and limited discovery

related to what it perceives as a violation of IRPC 4.2, which prohibits counsel from engaging in

unauthorized *ex parte* communications with certain constituents of an organization represented

by counsel in the matter. USACE seeks the following:

> (1) a protective order prohibiting Plaintiff's counsel from engaging in further unauthorized *ex parte* communications with USACE constituents;
> (2) the exclusions from evidence of Ryne Linehan's declarations;
> (3) the disqualification of Matthew Z. Crotty as Plaintiff's counsel in this case; and
> (4) limited discovery necessary for Defendant to assess both the scope of Plaintiff's counsel's violations of Rule 4.2 and whether additional sanctions are warranted.

Def.'s Cross-Mot. 3 (Dkt. 44). USACE additionally seeks an order from the Court disqualifying

Crotty's co-counsel Michael B. Love ("Love") and Thomas G. Jarrard ("Jarrard"), if they

"participated in, approved, and/or were aware of the *ex parte* communications." *Id.* at 4.

The Court heard oral argument on the above-described motions on January 16, 2018.

Based on the arguments made at the hearing, the Court concluded that it would be necessary to

---

[4] Attorneys practicing in the District of Idaho, including members of the Bar as well as attorneys admitted *pro hac vice* for a specific matter, "must familiarize themselves with and comply with the Idaho Rules of Professional Conduct of the Idaho State Bar and decisions of any court interpreting such rules." Dist. Idaho Loc. R. Civ. 83.5(a).

review the records of communications with Linehan (and communications regarding communications with Linehan). Therefore, the Court ordered Crotty to produce for *in camera* review all communications and office notes regarding Linehan, including communications between counsel. (Dkts. 57, 58.) 395 pages were timely provided to the Court and the Court has reviewed these documents. Given the context of the dispute and the fact that the Court ordered that the documents be submitted for *in camera* review, the Court does not summarize or describe these documents other than as necessary to support this memorandum decision and order.

## DISCUSSION

### A. Peterson's Motion for an Additional Settlement Conference and Sanctions Is Denied.

On January 29, 2018, while Peterson's motion for an additional settlement conference and sanctions was pending, Peterson filed a Joint Written Statement Indicating How the Parties Intend to Proceed. (Dkt. 59.) That filing indicated that "[t]he parties do not desire to pursue further mediation/settlement negotiations, and request that the Court schedule a trial setting conference." *Id.* This joint statement moots Peterson's motion to the extent it seeks an additional settlement conference.

However, Peterson's motion also seeks sanctions for USACE's alleged failure to bring a representative with full settlement authority to the settlement conference. Mem. ISO Mot. for Add'l Settlement Conf. and Sanctions 4–5 (Dkt. 41-1). This request is based on the declaration of Linehan in which he says he had less than "full settlement authority." Second Linehan Decl. ¶ 5 (Dkt. 39-2 Ex. C).

There is no basis on this record to award Peterson his costs and fees or to impose any other sanctions against USACE relating to the February 2017 settlement conference. At the outset, the Linehan declaration on which Peterson relies does not support the premise that

USACE violated Judge Dale's pre-settlement conference order. Linehan says that AUSA Schaefer said to Linehan that Linehan did not have the authority to settle the case; rather, "he (Schafer) would be making the decisions about the case." *Id.* Such a statement from Linehan does not indicate that Schaefer lacked the authority required by Judge Dale's order. Indeed, USACE argues that AUSA Schaefer *did*, in fact, have authority to settle the case, subject to agency regulations which constrained the extent of such authority and which were discussed with Judge Dale at the beginning of the conference. Def.'s Opp. to Plf.'s Mot. for Add'l Settlement Conf. and Sanctions 4 (Dkt. 43). Judge Dale's Order provided that "[e]ach party to such settlement conference shall be represented by counsel authorized to participate in settlement negotiations." Order ¶ 2 (Dkt. 23). It further provided that "[i]n the case of … governmental entities … a representative for every party with **full settlement authority** must be **personally present** at the settlement conference." *Id.* ¶ 3. Nothing in the Order states the representative with full settlement authority could not be the government's attorney. Peterson argues that USACE was required to come to the settlement conference with unlimited settlement authority, presumably in the form of dollars, but USACE has placed in the record evidence showing that Schaefer came to the settlement conference with the full[est] settlement authority, and the power to settle within that amount, that the agency could send with him. In that setting, the Court is not persuaded that there has been a violation of Judge Dale's settlement conference order.

Separately, however, Peterson's allegation that USACE violated the pre-conference order relies exclusively on information provided by Linehan. As described to follow, the Court concludes that it was ethically improper for Peterson's counsel to acquire and use that information in the manner employed. It would, of course, be untenable to award the requested

relief sought by Peterson when the source of the information used to seek such relief came from improper conduct.

Finally, USACE argues that the limits on AUSA Schaefer's settlement authority did not prevent the parties from reaching a settlement. *Id.* Schaefer echoed this notion in a filed declaration. Schaefer Decl. ¶ 6(e) (Dkt. 43-1). At the hearing on this matter, AUSA Schaefer argued that the barrier to settlement was not the monetary limit on his authority but, rather, that he perceived a significant weakness in Peterson's case related to causation. He claimed he acted in good faith by appearing and participating with what he believed to be adequate settlement authority based on his evaluation of the merits of Peterson's case. He claimed to have listened carefully, even changing his perspective on some matters, but ultimately concluding that USACE's settlement offer should not be raised. The nature of such statements are, of course, inherently subjective, and come from counsel for the Defendants. There is nothing unusual in that, for purposes of sorting through the instant dispute. Neither is there anything in the record or the Court's assessment of Peterson's arguments to suggest what Schaefer has to say, even if subjective and made from the view of counsel for the defendants, is untrue.

The Court concludes that Peterson has not shown that USACE violated Judge Dale's order. Therefore, no sanctions are appropriate.

### B. Legal Standard Applicable to Pending Protective Order Motions

Both parties move for protective orders. Peterson frames the authority to grant his motion as arising from Federal Rule of Civil Procedure ("FRCP") 26. Plf.'s Mem. ISO Mot. for Prot. Order 6 (Dkt. 39). USACE does not expressly state the authority for its motion, but the motion title references "protective order" and it seeks "limited discovery necessary for Defendant to assess both the scope of Plaintiff's counsel's violations of Rule 4.2 and whether additional

sanctions are warranted." Def.'s Cross-Mot. 1, 3 (Dkt. 44). Hence, the Court also considers USACE's motion under FRCP 26.

Under that rule, "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FRCP 26(c)(1). Further, "[i]f a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery." FRCP 26(c)(2).

Here, the relief sought does not fit within the parameters FRCP 26. Protective order motions brought under FRCP 26 are appropriate where "discovery is sought." But, per FRCP 26(b)(1), the scope of discovery does not extend beyond "nonprivileged matter that is relevant to any party's claim or defense." The dispute at issue in the instant motions relates to the propriety of Crotty's communications with Linehan, not the content of such communications. Neither party has shown that this dispute is relevant to a particular claim or defense.[5] To begin, the instant motions arose based on a letter from AUSA Schaefer to Peterson's counsel. The letter was not a discovery request under the FRCP, no "discovery is sought," and therefore FRCP 26 does not apply. Moreover, the letter was sent June 30, 2017 — more than four months after discovery in this matter closed on February 3, 2017. Am. Sched. Order (Dkt. 19).

This does not mean, however, that the parties' protective order motions will be summarily denied. There have been allegations of ethical misconduct levied by USACE against opposing counsel, and the Court must address those allegations squarely if it is proper to do so.

---

[5] Peterson admits as much. His motion for a protective order contends that "the information Defendant's counsel seeks … has no relevance to the claims or defenses in this case." Plf.'s Mem. ISO Mot. for Prot. Order 6 (Dkt. 39).

In considering such matters, the Court begins from its "inherent authority to suspend or disbar lawyers" deriving from "the lawyer's role as an officer of the court which granted admission." *In re Snyder*, 472 U.S. 634, 643 (1985); *see also McCallum v. CSX Transp., Inc.*, 149 F.R.D. 104, 108–109 (M.D.N.C. May 4, 1993) (citing *Snyder* and relying on federal district court's inherent power rather than FRCP 26 when presented with an ethical issue raised under the same rule of professional conduct at issue in the instant case).

As described *supra*, attorneys practicing before a court of the District of Idaho, including members of the bar as well as attorneys admitted *pro hac vice* for a specific matter,[6] "must familiarize themselves with and comply with the Idaho Rules of Professional Conduct of the Idaho State Bar and decisions of any court interpreting such rules." Dist. Idaho Loc. R. Civ. 83.5(a). The relevant individual Rules within the IRPC are discussed in context below.

With regard to discipline, this Court's Local Rules provide in part that:

> This Court may impose discipline on any attorney practicing before this Court, whether or not a member of the bar of this Court, who engages in conduct violating the Idaho Rules of Professional Conduct, or who fails to comply with rules or orders of this Court. The discipline may consist of … any … action that the Court deems appropriate and just. In the event any attorney engages in conduct which may warrant discipline or other sanctions, the Court may, in addition to initiating proceedings for contempt … or imposing other appropriate sanctions pursuant to the Court's inherent powers and/or the Federal Rules of Civil … Procedure, initiate a disciplinary process … or refer the matter.

Dist. Idaho Loc. R. Civ. 83.5(b)(1). Such a referral may be "to any other court or to any bar association for investigation and/or disciplinary action." Dist. Idaho Loc. R. Civ. 83.5(b)(8).

---

[6] Two of Peterson's counsel, Love and Jarrard, are not members of the Idaho State Bar but both have been granted permission to appear *pro hac vice* in this matter. (Dkts. 3, 6, 10, 11.) As such, under Dist. Idaho Loc. Civ. R. 83.5(a), both counsel also are subject to the IRCP. Peterson's local counsel, Crotty, is a member of the Idaho State Bar.

Thus, under the Court's inherent power and the District of Idaho Local Civil Rules, the Court has wide discretion to act in regard to an attorney who violates the IRPC.

In the Ninth Circuit, federal courts apply state law in determining whether to disqualify an attorney. *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). Under Idaho law, "[t]he moving party has the burden of establishing grounds for the disqualification. The goal of the court should be to shape a remedy which will assure fairness to the parties and the integrity of the judicial process. Whenever possible, courts should endeavor to reach a solution that is least burdensome to the client." *Weaver v. Millard*, 819 P.2d 110, 115 (Idaho App. 1991) (citations omitted). Appropriately, where a motion to disqualify comes from an opposing party, "the motion should be viewed with caution." *Id.* The Preamble to the IRPC defines the scope of those Rules and provides in part that:

> Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Nevertheless, since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct.

IRPC Preamble ¶ 20. Additionally, the Preamble provides that "the Rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors and whether there have been previous violations." IRPC Preamble ¶ 19.

### C. Analysis of the Complained of Conduct under the IRPC

The parties filed cross-motions for protective orders. (Dkts. 40, 44.) USACE's motion expressly seeks to disqualify some number or all of Peterson's three attorneys based on alleged ethical violations. Def.'s Cross-Mot. 4 (Dkt. 44). The motion raises allegations that cannot be fully considered upon the motion record and that, if true, are serious. Thus, the Court ordered Peterson's counsel Matthew Z. Crotty to produce for *in camera* review correspondence and notes with or regarding Ryne Linehan. The Court's duty is to review Crotty's production for evidence counsel should be disqualified from further representing Peterson in this matter for violating the Idaho Rules of Professional Conduct. Because Crotty's production is by definition confidential material USACE has not seen, the Court lacks the benefit of adversarial briefing by the parties identifying and explaining the significance of any ethical issues that might be raised by the documents. Nonetheless, the Court has undertaken to evaluate whether the motion record, along with Crotty's *in camera* production, raises questions as to whether one or more of Peterson's counsel violated IRPC 4.2 by engaging in improper *ex parte* communication with Linehan.

### 1. Crotty Violated IRPC 4.2 Regarding Communications with Represented Persons.

The crux of USACE's argument to disqualify Crotty is that Crotty violated IRPC 4.2 by impermissibly communicating with Linehan. Crotty and his co-counsel assert they did nothing wrong because Linehan's role at USACE is not significant enough in this lawsuit to make communicating with him improper under IRPC 4.2. That Rule, entitled "Communication with Person Represented by Counsel," provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

The Rule's comments address its applicability to organizations:

> In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. Consent of the organization's lawyer is not required for communication with a former constituent. If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization. See Rule 4.4, Comment [2].

IRPC 4.2 cmt. 7. Per IRPC commentary, "constituents" as relevant here are "the positions equivalent to officers, directors, employees and shareholders held by persons acting for organizational clients that are not corporations." IRPC 1.13 cmt. 1. Because Linehan is a USACE employee, there can be no dispute that he is a USACE constituent for purposes of this analysis. The issue, then, is whether he was one of those constituents whose relationship to USACE made it improper for Crotty to communicate with him without opposing counsel's consent or a court order. To restate the relevant portion of comment 7 to IRPC 4.2, the question is whether Linehan (1) "supervises, directs or regularly consults with the organization's lawyer concerning the matter"; (2) "has authority to obligate the organization with respect to the matter"; or (3) is a constituent "whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability."

There is disagreement between the parties as to Linehan's role in the Peterson matter, but it is undisputed that Linehan is "the highest-ranking USACE employee stationed at Albeni Falls Dam," the facility where Peterson worked and where he alleges he was unlawfully discriminated against. Def.'s Cross-Mot. 2 (Dkt. 44); First Linehan Decl. ¶ 2 (Dkt. 39-2 Ex. B). Further, Linehan also was the senior "rater" (that is, a supervising evaluator) on performance evaluations Peterson received between 2012 and 2015, and Linehan participated in responding to Peterson's

discovery requests. Order re: Plf.'s Mot. to Extend Time for Dep. 2 (Dkt. 38). It strains credulity for Peterson's counsel to suggest, as they do, that the highest ranking USACE official at Peterson's worksite, who had signed Peterson's performance evaluations and who had participated in discovery in this matter, is somehow not a constituent with "authority to obligate the organization with respect to the matter," or "whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability."

Also significant is the fact that Linehan attended the February 2017 settlement conference as USACE's representative. Peterson's counsel argue that Crotty's subsequent communication with Linehan was not improper because Linehan "was not given authority to settle the case." Plf.'s Resp. to Def.'s Cross-Mot. for Prot. Order 4 ¶ 10 (Dkt. 48). They also argue Crotty "took steps to ensure that his communication with Mr. Linehan was proper," including by receiving written assurances from Linehan that he "did not have the power to make the ACE resolve Mr. Peterson's case." *Id.* 5–6 ¶ 21. The only document in the Crotty production that might bear out this assertion is Linehan's second declaration, which states in part as follows:

> I was not given "full settlement authority." When I asked COL Buck, in writing, for "full settlement authority" I was told, by the Agency's attorney, James Schafer, that I did not have the authority to settle the case. Instead Mr. Schafer informed me that he (Schafer) would be making the decisions about the case. At no time did Mr. Shafer tell me that he (Schafer) represented me. No other Agency lawyer has told me that I was represented by Agency attorneys on the Trevis Peterson case or in any other capacity. At no time did any agency employee, Mr. Schafer, or any other agency lawyer, tell me that I had the power to make the agency resolve Mr. Peterson's case. At no time did any Agency lawyer or supervisor tell me that I "spoke for" the Agency. At no time did any Agency lawyer or supervisor tell me that I could not have contact with Mr. Peterson's lawyers.

Second Linehan Decl. ¶ 5 (Dkt. 39-2 Ex. C).

There is no safe harbor found in Linehan's statements for purposes of IRPC 4.2. To begin, the test under comment 7 to IRPC 4.2 inquires whether the constituent "has authority to

*obligate* the organization with respect to the matter," which is a broader question than whether

the constituent is empowered to fully *resolve* the matter. That is, a constituent may possess

authority to obligate the organization with respect to a matter while lacking authority to resolve

the matter. In such a circumstance, the constituent qualifies as a represented person for purposes

of IRPC 4.2 and *ex parte* communication is impermissible.

Second, Linehan provided Crotty a February 2017 memorandum from Col. Buck

directing Linehan to represent USACE at settlement and outlining Linehan's settlement

authority. The memorandum states that Linehan's "role is to be the voice of the District as the

client to ensure that any settlement agreement is consistent with the mission requirements of the

Seattle District and particularly the Operations Division." It further states that Linehan was

authorized to approve certain monetary and non-monetary settlement terms. Linehan emailed the

memorandum to Crotty at the same time as he emailed his executed second declaration, on June

30, 2017. Just twenty minutes after Linehan sent Crotty the executed declaration, Crotty

forwarded it to co-counsel along with a copy of the memorandum. Crotty's email to co-counsel

expressly acknowledged the memorandum and referenced its contents.

This is significant because Linehan's second declaration is irreconcilable with the

memorandum. The memorandum plainly states that Linehan's "role is to be the voice of the

District as the client." But Linehan declared that "[a]t no time did any Agency lawyer or

supervisor tell me that I 'spoke for' the Agency." This inconsistency in Linehan's declaration

makes it improper for Crotty to have relied on Linehan's representation about the scope and

nature of his relationship to the matter, *even apart* from the other details of the factual

circumstances — details which raised clear indicia of a potential IRPC 4.2 prohibition against

communication of this sort with Linehan while Crotty was representing Peterson.

Crotty might argue he had not fully read the memorandum or recognized the discrepancy, but that argument offers no solace. Commentary to IRPC 4.2 provides that:

> The prohibition on communications with a represented person only applies in circumstances where the lawyer knows that the person is in fact represented in the matter to be discussed. This means that the lawyer has actual knowledge of the fact of the representation; but such actual knowledge may be inferred from the circumstances. See Rule 1.0(f). Thus, the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious.

IRPC 4.2 cmt. 8. Under the template of this comment, Crotty is deemed to have actual knowledge of the contents of the February 2017 memorandum from Col. Buck. That memorandum demonstrates that Linehan had authority to obligate USACE, even if there were limits upon that authority.

Moreover, Crotty knew that Linehan was a decision-maker at the settlement conference. While working on the first declaration, Linehan reminded Crotty on June 25, 2017 that he "was designated as the deciding official for settlement negotiations with Trevis [Peterson]." Crotty's reply the next day said "I understand you were the deciding official re Trevis' settlement." Even more significantly, Linehan's mere presence at the settlement conference in February suggested that he was a represented person for purposes of IRPC 4.2, and the Court infers that Crotty had such knowledge no later than that date.

The Court recognizes that Peterson, through his counsel, might contend that any authority Linehan had was a mere sham that should not be considered valid for purposes of IRPC 4.2.[7] But if Crotty wanted to make that argument, it would have been more appropriate to face the issue head-on with opposing counsel or the Court before speaking with Linehan under circumstances

---

[7] Peterson's motion for additional settlement conference does not make quite this argument. It seeks an additional settlement conference on the basis that Linehan did not have "full settlement authority" and therefore USACE violated Judge Dale's order. But Peterson does not argue in that motion that Linehan had no settlement authority at all.

that, at a minimum, raised questions about whether such communication was prohibited by IRPC 4.2. "The attorney who seeks court approval before contact does not risk an ethical violation, but one who does not acts at his or her own peril." *McCallum*, 149 F.R.D. at 110.

Peterson frames Linehan as a whistleblower, arguing that it would be counter to public policy to give USACE the requested access to Linehan's communications with Peterson's counsel. Plf.'s Mem. ISO Mot. for Prot. Order 8–10 (Dkt. 39). This argument is unavailing. IRPC 4.2 offers no safe harbor for an attorney to engage in *ex parte* communication with a represented person who is purported to be a whistleblower. At any rate, the Court is not persuaded by Peterson's assertion that "disclosing the information sought by defendants would have a chilling effect on whistleblowers in our government" or that "[r]equiring a plaintiff's counsel to answer such questions would likely deter them, and future plaintiffs, from bringing meritorious claims based on whistleblower information." *Id.* at 8–9. First, IRPC 4.2 is not implicated as to those whistleblowers who are not in the class of constituents treated as represented persons under IRPC 4.2 comment 7. Second, IRPC 4.2 applies in the context of a "matter" and even then only regarding the representation. Where there is no "matter" or the communication is outside the scope of the matter, IRPC 4.2 is not implicated. Third, the commentary provides that "[i]f a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule." IRPC 4.2 cmt. 7. Thus, it appears that Crotty could have told Linehan that their communication was improper and suggested that Linehan retain independent counsel. Finally, the plain language of IRPC 4.2 indicates counsel can seek a court order authorizing communication with a represented person — presumably including a represented whistleblower. Given these alternatives, the Court declines to adopt Peterson's reasoning on this issue.

Based on the facts and analysis discussed in this section, the Court concludes Crotty violated IRPC 4.2 by impermissibly communicating with Linehan. Notwithstanding this conclusion, the Court is keenly sensitive to the fact that hindsight review of ethical questions is distinctly different from being aware of the multitude of ethical obligations and issues attorneys must be aware of and comport with in the moment while in practice. The Court also is mindful that the IRPC preamble states in part that "assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question and in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation." IRPC Preamble cmt. 19. The documents submitted *in camera* by Crotty contain evidence of his having competently and diligently recognized certain potential ethical issues and navigated them appropriately. Nonetheless, the fact remains that Crotty communicated with Linehan under circumstances in which Crotty knew or should have known that Linehan was a represented person under IRPC 4.2.

Next, the Court must determine the scope of the violation. Per comment 8 to IRPC 4.2, communication with a represented person is only prohibited where the lawyer knows the person is in fact represented in the matter to be discussed. Applying this, all of Crotty's communications with Linehan regarding the Peterson case were impermissible after Crotty knew Linehan was a constituent with authority to obligate USACE in the Peterson matter. The Court concludes Crotty absolutely had that knowledge no later than the date of the settlement conference in February 2017, where Linehan appeared as a representative of USACE. Thus, at a minimum, all of the communications between Crotty and Linehan in May and June 2017 leading up to the drafting and signing of Linehan's first and second declarations were improper.

The Court does not decide today whether it was improper for Crotty to communicate with Linehan in November 2016 or April 2017 regarding Linehan's inquiry into his own potential discrimination lawsuit against USACE. Crotty knew from USACE's initial disclosures in the Peterson case, as of October 2016, that Linehan was a USACE constituent who might have discoverable knowledge. Order re: Plf.'s Mot. to Extend Time for Dep. 3 (Dkt. 38). Crotty also must have known (and appeared to anticipate potential benefit from) that there would be overlap between the facts and evidence in Peterson's case and the facts and evidence in any case Linehan might bring. When Linehan first asked Crotty about representing him in an age discrimination lawsuit, against USACE, at Albeni Falls Dam, Crotty had already been representing Peterson in an age discrimination lawsuit, against USACE, at Albeni Falls Dam, for at least nine months. The overlap of subject matter, defendant, and location should have immediately put Crotty on notice of the ethical issues in talking with Linehan, at all, as to both his prospective client Linehan and his current client Peterson. Moreover, Crotty should have recognized when Linehan contacted him that communicating with Linehan might violate IRPC 4.2. As such, it is possible that even the seemingly innocuous and independent communications about potentially representing Linehan were improper, due to Linehan's position at USACE and also — due to Linehan's position as highest level employee in Peterson's specific workplace — in the Peterson case. Under IRPC 4.2, the issue turns on whether Crotty's conversations with Linehan were "communicat[ions] about the subject of" the Peterson case. However, in light of the consequences the Court will impose on Crotty, the Court need not, and does not, decide this issue at this time.

In summary, for purposes of IRPC 4.2, the Court concludes that Linehan was a USACE constituent represented by counsel, with whom it was improper for Crotty to communicate about

the Peterson matter absent a court order or opposing counsel's consent. The consequences of Crotty's violation of IRCP 4.2 will be discussed below.

**2. The Record Does Not Show Love or Jarrard Violated the IRPC.**

USACE's motion seeks to disqualify Love and Jarrard from further representing Peterson in this matter "if . . . they participated in, approved, and/or were aware of the *ex parte* communications" between Crotty and Linehan. Def.'s Cross-Mot. 4 (Dkt. 44). Both Love and Jarrard declare that they have never personally communicated with Linehan. Neither the record nor Crotty's production suggest otherwise. Thus, they cannot have violated IRPC 4.2. Nor is there any evidence they knowingly assisted or induced Crotty to communicate with Linehan, which might result in a violation of IRPC 8.4(a) regarding misconduct.

Because Love and Jarrard did not personally communicate with Linehan, they did not violate IRPC 4.2. The Court therefore concludes that their disqualification as counsel on this case is not warranted and USACE's cross-motion is denied to the extent it seeks that disqualification.

**D. Ruling on USACE's Cross-Motion for Protective Order, Sanctions, and Discovery**

USACE seeks (1) to prohibit Peterson's counsel from engaging in *ex parte* communications with USACE constituents; (2) to prohibit Peterson's counsel from disclosing any information obtained through *ex parte* communications with USACE constituents; (3) to compel Peterson's counsel to produce to USACE various information related to counsel's interactions with USACE constituents; (4) to compel Peterson's counsel to produce to the Court for *in camera* review certain communications with USACE constituents; (5) to permit USACE to depose Linehan regarding his declarations and the circumstances under which he provided them; (6) to exclude from evidence Linehan's first and second declarations; and (7) to disqualify

Peterson's counsel from further representing Peterson in this case. Each of these requests will be addressed in turn.

As to the first item, AUSA Schaefer declares that sixteen named individuals (one of whom is Linehan) "either participated in the employment decisions at issue in this case, participated in the handling of Plaintiff's EEO complaints and ADEA claims, or are alleged to have engaged in acts of age discrimination that Plaintiff seeks to impute to Defendant." Schaefer Decl. ¶ 19 (Dkt. 45-1). Aside from Linehan, USACE has not sufficiently demonstrated these individuals each qualify as "represented persons" under comment 7 to IRPC 4.2. If a particular USACE constituent is a represented person, then IRPC 4.2 already prohibits counsel from engaging in *ex parte* communications with that person. If a particular constituent is not a represented person, then no protective order is warranted because USACE has not shown the need or legal justification for one. Because the Court has concluded that Linehan is a represented person, further *ex parte* communication with him on this matter is prohibited by IRPC 4.2.

The second request asks the Court to prohibit counsel and anyone who assisted counsel from disclosing, without the Court's prior authorization, any information obtained through *ex parte* communications with USACE constituents. Def.'s Cross-Mot. 3–4 (Dkt. 44). The only such information the Court is aware of at this time is Linehan's information. The Court will order that Peterson and his counsel (including those who assisted counsel) not disclose any information Linehan provided Crotty during *any* of their interactions. Crotty's violation of IRPC 4.2 makes the disclosure of Crotty's communications with Linehan improper as to those conversations in May and June 2017. Although the Court is not deciding whether the prospective client consultations in November 2016 and April 2017 were impermissible under IRPC 4.2, the Court will nonetheless bar disclosure of information gained during those consultations because

such information covers the same subject matter as the prohibited communications and therefore must be included or the non-disclosure order would be hollow. Peterson cannot be allowed to benefit from the use of information his counsel acquired improperly.

Here again, however, the Court highlights the distinction between "USACE constituents" and "USACE constituents who are represented persons under IRPC 4.2 comment 7." Because there is no indication Peterson's counsel have communicated with any other USACE constituent who is a represented person, the Court will not issue an order barring disclosure of the contents of such communication. If counsel communicated with a USACE constituent who is not a represented person, USACE is not entitled to the requested order because the communication is not improper under IRPC 4.2. And IRPC 4.2 already bars communications with represented persons, so an order prohibiting such conduct is unnecessary.

The third item seeks an order compelling Peterson's counsel to produce to USACE various information related to counsel's interactions with USACE constituents. Def.'s Cross-Mot. 4 (Dkt. 44). The request seeks, with respect to the sixteen named constituents identified earlier in the motion, all non-privileged communications with each constituent; a privilege log of all communications with each constituent that counsel contends are protected from disclosure; all draft and final statements and declarations of each constituent; and a list of the constituents with whom counsel has communicated regarding this case, along with details of the date, place, and subject matter of the communications. *Id.*

The Court denies this request. As to all of the named constituents besides Linehan, USACE has not shown that they are represented persons under Rule 4.2 with whom *ex parte* communications would be improper. Nor is there any evidence counsel engaged in communications with any of them. Accordingly, USACE is not entitled to a compelled

production of the requested information. As to Linehan, the Court denies the request as moot. This memorandum decision and order addresses the contents of Crotty's *in camera* production and imposes appropriate action in regard to the ethical violation described in this decision.

In the fourth item, USACE requests an order compelling counsel to produce to the Court for *in camera* review all communications with the named constituents that counsel contend are protected from disclosure. Def.'s Cross-Mot. 4 (Dkt. 44). Again, the request is denied as to the constituents other than Linehan, for the same reasons as stated previously. As to Linehan, this request was effectively granted on the record at the motion hearing, when the Court ordered Crotty to produce to the Court all communications and office notes with or regarding Linehan. Crotty complied with this order. The Court perceives there is nothing more to grant under this request and so regards the request as moot.

In the fifth item, USACE requests an order permitting (but not requiring) USACE to depose Linehan regarding his declarations and the circumstances under which he made them. Def.'s Cross-Mot. 4 (Dkt. 44). As stated in the preceding paragraphs, this request is moot because the Court has examined the Crotty production, determined the extent of the alleged ethical violation, and imposed appropriate actions through this decision. Nothing would be gained by permitting USACE to depose Linehan.

In the sixth item, USACE requests an order excluding from evidence Linehan's first and second declarations and all evidence obtained therefrom. Def.'s Cross-Mot. 4 (Dkt. 44). The "all evidence obtained therefrom" is too uncertain to structure such a prohibition upon; it is possible that some as yet unidentified or unstated form of evidence might be argued to be so tied to those declarations as to justify exclusion of such evidence in future proceedings. The Court will deal with such issues if and when they arise.

However, for present purposes, the Court does order that Linehan's declarations cannot be used as evidence because Crotty's communication with Linehan to obtain such declarations violated IRPC 4.2. Nor can Peterson utilize any evidence Crotty acquired from Linehan at any time. This is broader than what USACE seeks. USACE requests the exclusion of all evidence obtained from Linehan's declarations, but when USACE filed its motion, it was not in a position to know that Linehan had provided information to Crotty as early as November 2016. Peterson cannot be permitted to benefit from Crotty's ethical violation, so *all* evidence and information Crotty acquired from Linehan at any time prior to the date of this decision must be excluded. Obviously, the Court does not know the exact details of what evidence may be included, but Peterson's counsel will know — and as officers of the court, they are required to abide by such a prohibition.

The seventh item seeks an order disqualifying all of Peterson's counsel. Def.'s Cross-Mot. 4 (Dkt. 44). In making such a request, the USACE defendants seek to use the IRPC as a "procedural weapon," which the IRPC Preamble cautions against. Countering that is the fact that the Court has concluded that Crotty violated IRPC 4.2, a rule that contains express provisions for an attorney to seek court approval prior to the communication. He did not seek court approval. "The attorney who seeks court approval before contact does not risk an ethical violation, but one who does not acts at his or her own peril." *McCallum*, 149 F.R.D. at 110.

As a practical matter, there is no realistic way to permit Crotty to continue representing Peterson in this case given his interactions and communications with Linehan. Excluding Linehan's declarations and information from evidence does not mitigate Crotty's knowledge of that information and the obvious opportunity to apply it in the context of this case. In discussing that obvious conundrum, the Court does not suggest that Crotty would consciously or

intentionally attempt to use information that has been declared off-limits. Rather, the Court recognizes the simple fact that having knowledge of such information inevitably is entwined with other knowledge Crotty may have, and it would be unrealistic and even arguably unfair to allow Crotty to continue in the case but at the same time order that he not employ any information he may have learned from his interactions with Linehan. Even if only subconsciously, simply having Linehan's knowledge in his mind makes it likely that Crotty could not help but use it while continuing to develop strategy and prosecute the case.

The Court acknowledges that disqualifying Crotty from the case will cause a burden upon Peterson. However, the guidance from *Weaver* is that the Court "should endeavor to reach a solution that is least burdensome to the client." 819 P.2d at 115. The Court concludes that disqualifying Crotty is the least burdensome solution to the problem raised by Crotty's ethical violation, and it will grant USACE's request. He will be deemed disqualified from further representation in this case effective 21 days from the date of this decision and order.

Because Crotty is the attorney admitted to practice before this Court, and the other two counsel are admitted *pro hac vice* upon his sponsorship, one effect of this disqualification of Crotty is that as of the date this memorandum decision and order issues, the other counsel — Love and Jarrard — must associate with new counsel, admitted in this Court, in order to remain in the case. Dist. Idaho Local R. Civ. 83.4(e). Obviously, they have a responsibility to Peterson to seek to do so and to remain as counsel, unless some reason that is proper under the professional rules and the court rules would permit their withdrawal. For purposes of addressing this issue, the Court will apply a procedure based on Dist. Idaho Loc. R. Civ. 83.6, regarding the appearance, substitution, and withdrawal of attorneys. Under that rule, a client must advise the Court in writing in what manner the client will be represented within 21 days of receiving formal

notice of the withdrawal of an attorney. Dist. Idaho Loc. R. Civ. 83.6(c)(2). Failure to do so is sufficient grounds for dismissal of the action. *Id.* The Court will apply this rule here and require Peterson, or Peterson's new counsel admitted in this Court, to advise the Court in writing in what manner Peterson will be represented, within 21 days of the date of this decision.[8]

USACE also seeks to disqualify Love and Jarrard if "they participated in, approved, and/or were aware of the *ex parte* communications." Def.'s Cross-Mot. 4 (Dkt. 44). Crotty's *in camera* production indicates that Love and Jarrard did not participate in or approve the communications but that they were aware of them. Nonetheless, the Court denies USACE's request to disqualify them. As discussed *supra*, the present record does not show that either Love or Jarrard have violated the IRPC. Therefore, the Court concludes their disqualification would be inconsistent with the goal "to shape a remedy which will assure fairness to the parties and the integrity of the judicial process." *Weaver*, 819 P.2d at 115. Depriving Peterson of his entire legal team would impose a heavy burden. Peterson could choose to do that on his own, but the Court will not require that all of his counsel be disqualified absent proof that Love and Jarrard themselves have violated the IRPC.

There remains, however, the anomaly that both Love and Jarrard were willing to use the information obtained from Linehan and the pragmatic concern that they, too, now know at least some of that information. Accordingly, the Court orders that neither Love nor Jarrard may use or disclose any information from or about Linehan, including any such information Crotty gave them or that appears in the Linehan declarations. Additionally, the Court orders that neither Love

---

[8] If the new representation is a substitution of counsel for all purposes by an attorney admitted to practice in this Court, then Love and Jarrard will no longer be considered counsel of record. If the new representation is the addition of an attorney admitted to practice in this Court, with Love and Jarrard to continue as co-counsel, then new *pro hac vice* applications will be required. However, the Court orders that no new *pro hac vice* application fee needs to be paid.

nor Jarrard may examine or cross-examine Linehan in this matter, nor assist anyone else in doing so, should Linehan be called as a witness. Love and Jarrard are not to discuss Linehan or directly or indirectly provide his information to any new co-counsel who might appear in the matter.

### E. Peterson's Motions for Protective Orders Are Denied.

Peterson seeks a protective order barring USACE from discovering various communications and information related to interactions between Peterson's counsel and USACE employees. Plf.'s Mem. ISO Mot. for Prot. Order 7 (Dkt. 39); Plf.'s Am. Mot. for Prot. Order (Dkt. 40). To the extent the Court has denied USACE's formal request, via its motion for a protective order, for such documents, the request is moot. To the extent that Peterson's motions are not moot, they are denied. As discussed *supra*, there is no basis to grant a protective order because FRCP 26(c) does not apply in this circumstance. The materials USACE requested in counsel's letter of June 30, 2017 do not constitute a formal discovery request. Even if they did, discovery is closed and the requested materials are outside the scope of discovery anyway. Peterson does not need a protective order because he is under no affirmative duty in the first instance to provide the requested materials.

<u>**CONCLUSION**</u>

Peterson's Motion for an Additional Settlement Conference and Sanctions is denied. The motion is moot (and therefore denied) with respect to the request for an additional settlement conference because the parties have since filed a joint statement indicating they do not wish to engage in further settlement attempts short of trial. The motion is denied with respect to the request for sanctions because Peterson has not shown USACE violated Judge Dale's pre-settlement conference order or otherwise engaged in sanctionable conduct.

Peterson's counsel Crotty violated IRPC 4.2 by engaging in unauthorized *ex parte* communication with Linehan, who qualifies as a represented person. There is no proof that Love and Jarrard violated IRPC 4.2 in this matter.

As a consequence of Crotty's ethical violation, Crotty will be disqualified from further representing Peterson in this matter. Crotty will be barred from using or disclosing, in the context of the Peterson matter, any information from or about Linehan to any person. Co-counsel Love and Jarrard will not be disqualified. Linehan's declarations will be excluded from evidence. Love and Jarrard will be barred from interacting with Linehan at any point during this matter. Nor may they use or disclose any information from or about Linehan, including to new co-counsel. They may not examine or cross-examine Linehan as a witness or assist anyone else in doing so.

USACE will not be permitted to depose Linehan or to require Peterson or Peterson's counsel to produce additional documents related to any communications or interactions between counsel and USACE constituents.

Peterson or his new counsel must notify the Court in writing within 21 days how Peterson will be represented in this matter going forward. For Love and Jarrard to continue representing Peterson in the matter, they must associate with Idaho counsel appearing in the matter and new *pro hac vice* applications (with no fee) must be submitted on their behalf.

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

## ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's Motion for Protective Order (Dkt. 39) and Amended Motion for Protective Order (Dkt. 40) are **DENIED**.

(2) Plaintiff's Motion for Additional Settlement Conference and Sanctions (Dkt. 41) is **MOOT** to the extent it seeks an additional settlement conference and **DENIED** to the extent it is not moot.

(3) Defendant's Cross-Motion for Protective Order, Sanctions, and Discovery (Dkt. 44) is **GRANTED IN PART AND DENIED IN PART**:

   a. Plaintiff's counsel are ordered not to use or disclose any information from or about USACE constituent Ryne Linehan.

   b. The First and Second Declarations of Ryne Linehan (Dkt. 39-2 Ex. B and Ex. C) are excluded from evidence for all purposes.

   c. All other information Ryne Linehan provided to Plaintiff's counsel is excluded from evidence for all purposes.

   d. Defendant's request to disqualify counsel will be addressed in a separate order.

   e. Defendant's motion is otherwise **DENIED**.

DATED:  **March 28, 2018.**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge